(No. 50904.—

*In re* ESTATE OF MAY CROWDER.—(Iris Bennett, Appellant, v. Eugene Wilson *et al.,* Appellees.)

*Opinion filed March 14, 1979.*

Charles J. Kolker, of East St. Louis, for appellant.

John L. McMullin, of Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, of St. Louis, for appellees Eugene Wilson and Annette Crowder Wilson.

R. E. Eggmann, of Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville, for appellee Chester J. Dillon.

MR. JUSTICE MORAN delivered the opinion of the court:

This action arises out of a series of objections to the probate of the will of the testator, May Crowder. The testator died on August 20, 1970. Her will, dated December 13, 1961, was admitted to probate in Monroe County on December 24, 1970. Letters testamentary were issued to the executor, Chester J. Dillon, on that date.

The will directed the executor to pay the expenses of administration, which specifically included payment of the

testator's just debts, the expenses of her last illness and her funeral, and the taxes resulting from her death. The will further provided that all the testator's real and personal property be conveyed into a testamentary trust, with the testator's daughter, Annette C. Wilson, as trustee. The trustee was given unbridled discretion in the management and control of the trust estate and was to be relieved of liability for any depreciation or loss. The beneficiaries of the trust were the three grandchildren (the trustee's children), Bruce Wilson, Tamara Wilson Koob (now Ellis), and Iris Wilson Hoffman (now Bennett). The will set forth that the trustee was to disburse the trust assets equally to the grandchildren in accordance with the following schedule: when a grandchild attained the age of 25, he or she was to receive one-third of his or her share of the principal and undisbursed income; at age 30, one-half of the remainder of his or her share; and at age 35, the balance of the share. At the time of the testator's death, Tamara Ellis and Iris Bennett had already attained the age of 35, and Bruce Wilson was 27 years old.

On October 15, 1975, Iris Bennett and Bruce Wilson filed petitions which sought the removal of the trustee, the removal of the executor, an accounting of the trusteeship, and a reconsideration of the executor's and attorney's fees which had previously been allowed by the court. The petitions alleged, among other things, that (1) the trustee had failed to provide an accounting of the assets of Dawn Investment Company, a closely held corporation in which the testator was majority shareholder, (2) the trustee had a conflict of interest because her husband, Eugene Wilson (Wilson), was the managing officer of Dawn Investment Company, (3) the trustee had allowed farm property to remain idle and unproductive during the five years since the estate was opened, (4) the executor had failed to turn over the estate assets to the trustee, thereby depriving the beneficiaries of the use and benefit of the assets, and (5)

the executor's failure to diligently file a Federal estate tax return had exposed the estate to substantial penalties and interest. On December 31, 1975, the trial court entered an order which allowed for the distribution of the farm property to the beneficiaries and allowed the trustee, upon her own request, to resign from the position. On February 20, 1976, Iris Bennett and Bruce Wilson filed their objections to the executor's final accounting. The objections repeated many of the allegations embraced in the earlier petitions and further alleged, among other things, that the accounting failed to include certain jewelry owned by the testator at the time of her death. On September 7, 1976, Iris Bennett filed a petition, subsequently amended, for recovery of assets and discovery of information. This petition alleged, in essence, that the trustee had improperly converted the above-mentioned jewelry for her own use and that Eugene Wilson (trustee's husband) had caused, to the detriment of the estate, considerable diminution of value in the assets of Dawn Investment Company.

The trial court, having consolidated the issues for the purpose of hearing, entered its final order on February 15, 1977. The order overruled the objections to the final accounting, denied each of the petitions filed by the various beneficiaries, and declared that the jewelry in question became the absolute property of the trustee by *inter vivos* gift from the testator. Only Iris Bennett (plaintiff) appealed. The appellate court, pursuant to Supreme Court Rule 23 (58 Ill. 2d R. 23) affirmed. (58 Ill. App. 3d 1115.) We granted plaintiff leave to appeal.

Plaintiff presents eight issues for review. We will consider the issues as they affect the estate's interest in the following four assets: (1) the Dawn Investment Company, (2) the farm property, (3) the jewelry, and (4) the trust estate as a whole.

Dawn Investment Company was a closely held Mis-

souri corporation, the sole assets of which were shares of stock in other corporations. Its only shareholders were the testator and her son-in-law, Wilson. The testator owned 325 shares (80% of the total). Wilson was the sole managing officer of the corporation both during the testator's lifetime and thereafter, until the corporation was dissolved in December of 1974. The estate's interest in the corporate assets at the time of the testator's death was valued at approximately $112,000. Upon liquidation of the corporation four years later, the estate's interest had diminished to approximately $62,000. Plaintiff seeks to have either the executor or Wilson held liable for the diminution in value.

The trial court expressly found that there was no evidence that anyone other than Wilson had the right to participate in the management of the corporation, that the executor had no right to liquidate any of the assets of the estate, and that the eventual liquidation of the corporation was "at the request, insistence and [with the] participation" of plaintiff and the other beneficiaries. Plaintiff does not contend here that these findings are contrary to the manifest weight of the evidence. Nonetheless, she persists in urging that liability be placed, alternatively, on the executor for failing to obtain and liquidate the corporate assets or on Wilson as an executor *de son tort* for liquidating its assets at a reduced value.

Generally, an executor has a duty to administer the assets of an estate in accord with his statutory duty and the terms of the will. The Probate Act authorizes, but does not require, the executor to liquidate assets and thereby reduce the personal estate to cash when such action is necessary for the proper administration of the estate. (Ill. Rev. Stat. 1969, ch. 3, par. 209.) The express intent of the testator's will in this case, however, was to limit the authority of the executor and to repose any such authority in the trustee. The will, in providing that the trustee may

distribute shares of the trust principal in kind or partly in kind and partly in money, further contemplated that assets be preserved either by retention or by reduction to cash. We agree with the trial court's finding that except as necessary to pay debts, expenses and taxes, the executor was not authorized by the will to liquidate any assets of the estate, which would, of course, include the testator's interest in Dawn Investment Company. Consequently, we find no basis for holding the executor liable for any loss which might have resulted from the failure to liquidate at a time when the market value of the corporate assets was higher.

Plaintiff's alternative theory is that Wilson should be liable as an executor *de son tort* for the disadvantageous liquidation of the corporation. An executor *de son tort* is defined as "a person who without any authority intermeddles with the estate of a decedent and does such acts as properly belong to the office of an executor or administrator, and thereby becomes a sort of *quasi* executor, although only for the purpose of being sued or made liable for the assets with which he has intermeddled." (*Grace v. Seibert* (1908), 235 Ill. 190, 192.) To hold Wilson liable as an executor *de son tort,* we would have to find that he intermeddled with the testator's estate. We find nothing in the record to support such a conclusion. It is undisputed that Wilson was the only person to exercise managerial control over the corporation. He did so both before and after the testator's death. His managerial duties involved the buying and selling of securities, which constituted the only assets of the corporation. Neither the testator nor the estate ever exercised any power, such as voting rights, which inhered in the ownership of corporate stock, until plaintiff demanded that the corporation be dissolved. Clearly, Wilson engineered the liquidating of the corporation's stock portfolio, at the plaintiff's request and insistence, as

the duly authorized agent of the corporation, and not as an intermeddler in the affairs of the estate. Under these circumstances, we would be unwarranted in finding Wilson to be an executor *de son tort.*

Plaintiff also contends that the executor and the trustee are both liable for waste and loss of income with respect to the estate's farm property.

At the time of her death, the testator owned an 885-acre farm valued at $178,425. Only 320 acres were tillable. For six years prior to the testator's death, the tillable land was sharecropped by two farmers. The testator received one-third of the income derived from the farming operation. Her share averaged about $8,000 annually.

Shortly after the testator's death, the trustee instructed the executor to inform the tenant farmers that their annual lease would not be renewed. At the time, both the trustee and the plaintiff mistakenly thought that the trustee, individually, was the sole owner of the farm under the will. When the lease expired on September 1, 1971, the farmers terminated all farming operations. The land lay idle, except for 68 acres on which the trustee planted grass, until June 1973 when farming operations were resumed at the behest of the plaintiff and the other beneficiaries. Due to the late start in 1973, the owners' one-third share of the income amounted to only $4,303. Plaintiff seeks reimbursement for the income lost in 1972, the diminution in income in 1973, and the cost of returning the land to full productivity.

The Probate Act provides that, *except as otherwise provided in the will,* the executor shall take possession of all the testator's real estate during the period of administration, and, while retaining possession, shall collect the rents and earnings therefrom, and may make all reasonable expenditures necessary to preserve the real estate. (Ill. Rev. Stat. 1969, ch. 3, par. 219a.) The instant will explicitly

states that the trustee, not the executor, shall take possession of all property, real and personal, and exercise the management powers attendant thereto. Not only was it the clear intent of the will to give complete dominion over the farm property to the trustee, but also the trustee was to be relieved of liability for depreciation or loss which resulted from her actions. Plaintiff suggests that the trustee should be held accountable nonetheless for waste and income lost because she constructively misappropriated the farm property. Plaintiff cites no relevant authority for this proposition and we find no merit to it. The trustee obtained no personal windfall out of terminating the farm operations. We agree with the trial and appellate courts that management of the farm was well within the broad discretionary authority endowed the trustee in the will.

Plaintiff's attempt to transfer the liability for farm waste and income lost to the executor is equally without merit. Plaintiff's novel theory is that if the trustee was responsible under the will for managing the farm property, then the executor should be liable as an executor *de son tort* for notifying the tenant farmers of the termination of their lease. The executor notified the tenant farmers only upon being instructed by the trustee to do so. In so doing, he was merely acting as the trustee's agent and not as an unauthorized intermeddler in the management of the estate property.

The next issue presented is whether the evidence sufficiently established a valid *inter vivos* gift of jewelry from the testator to the trustee. We find that it did.

The trustee's testimony relative to this issue was uncontradicted. The trustee received the jewelry while she was visiting the testator in the hospital shortly before the testator's death. The testator's housekeeper brought the jewelry to the hospital in a box which also contained three certificates of deposit. The value of the jewelry was later appraised at $12,450. The certificates of deposit were in

denominations of $10,000, $10,000 and $20,000, and designated the trustee and each of one of the three beneficiaries as joint owners of each. The testator examined the contents of the box, delivered it to the trustee, and told her that the jewelry was a gift to her and that the beneficiaries were to receive the full value of the certificates. The trustee transferred the certificates to the beneficiaries in accordance with the testator's wishes. Both the trustee and the plaintiff testified that the testator had frequently made gifts of jewelry to her daughter and grandchildren prior to the contested occasion.

Plaintiff asserts that such evidence did not clearly and convincingly establish the donative intent required of a valid *inter vivos* gift. She suggests that because the trustee's testimony was uncorroborated, the trial court should have regarded it with suspicion. As both the trial and appellate courts emphasized, the trustee's actions with regard to the certificates of deposit were persuasive indication of her veracity. The certificates designated the trustee as joint owner. Only she was aware of the testator's desire to have the three beneficiaries receive the full share of their respective certificates. The certificates totaled more than three times the appraised value of the jewelry. Had the trustee's testimony been a recent fabrication, she would hardly have voluntarily surrendered her right to half the value of the certificates after the testator's death. The evidence was clear, convincing and unrefuted, and we agree with the trial court's finding that the jewelry became the absolute property of the trustee by valid *inter vivos* gift.

Finally, we address the plaintiff's all-encompassing contention that the estate should be recompensed for the diminution in value which resulted from long delays in the administration of the estate. We note that a substantial potential loss to the estate—$44,600 in tax penalties and interest—was averted through payment by a third party without any cost to the estate. Although the executor and

the trustee may be faulted for the length of time that it took to distribute the trust assets to the ultimate beneficiaries, the mere passage of time was not responsible for the reduction in value of the various assets which comprised the estate. As both the trial and appellate courts concluded with respect to the estate's interest in the Dawn Investment Company, had the plaintiff and the other beneficiaries not demanded the dissolution of the corporation, the testator's shares might well have been transferred in kind to the beneficiaries without any adverse financial consequences. Having determined that the executor's actions did not cause the depletion in the estate assets, we find no basis for denying the executor the compensation granted him by the trial court. Plaintiff's request for attorney's fees for her good-faith effort to preserve the estate was not raised in either trial or appellate courts, and therefore cannot be presented here for the first time.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*